Linda **DENNO, as parent, legal guardian and next friend for Wayne Denno, Plaintiff,**

v.

**SCHOOL BOARD OF VOLUSIA COUNTY, Dennis Roberts, an individual and Robert Wallace, an individual, Defendants.**

No. 96–763–CIV–ORL–22.

United States District Court, M.D. Florida, Orlando Division.

Feb. 3, 1997.

Frank R. Jakes, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, for Linda Denno.

Bruce A. Hanna, Cobb, Cole & Bell, Daytona Beach, FL, for School Bd. of Volusia County, FL, Robert Wallace.

## ORDER

CONWAY, District Judge.

This cause comes before the Court on the Defendants' Motions to Dismiss (Doc. 4, 6, 7) and Plaintiff's Opposition to the Motion (Doc. 9). Plaintiff Linda Denno seeks to recover on behalf of her teen-aged son, Wayne Denno, for alleged violations of Wayne's civil rights [1] arising from the school's discipline of Wayne for displaying a Confederate flag. Defendants, the school board and school officials, seek dismissal of the claims against them. Plaintiff has withdrawn the claim for conspiracy in violation of Wayne's civil rights, under 42 U.S.C. § 1985. Therefore, the Court will only address the Motions to Dismiss as they relate to 42 U.S.C. § 1983, malicious prosecution, and punitive damages.

**Standard for Motion to Dismiss**

The accepted rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The material allegations of the complaint are taken as true for the purpose of deciding a motion to dismiss. *St. Joseph's Hospital v. Hospital Corp. of America,* 795 F.2d 948 (11th Cir.1986).

**Background facts**

The applicable facts, set forth in the light most favorable to the Plaintiff are as follows:

Wayne Denno was a student at Pine Ridge High School in Volusia County in December 1995 when he was suspended for nine school days for displaying a four-inch by four-inch Confederate battle flag during the school lunch period. Wayne was displaying the flag to his friends in the high school courtyard on December 13, 1995, when a school administrator approached Wayne and demanded that he put the Confederate flag away. The administrator also demanded that other students wearing apparel bearing Confederate symbols remove the items.

When Wayne attempted to explain why he was displaying the Confederate flag, the administrator ordered Wayne to accompany him to the high school student resource center for disciplinary action. On the way to the resource center, the administrator repeatedly told Wayne to "shut up" when he attempted to explain that he was displaying the Confederate flag because of its historical significance as a symbol of Southern heritage. The administrator told Wayne that he considered the flag to be a racist symbol and that Wayne did not have the First Amendment right to wear or display the Confederate flag on school grounds.

While at the student resource center, another student was detained for wearing a T-shirt with a Confederate flag on it When school administrators demanded that the student remove his shirt or turn it inside out, Wayne urged the student to "adhere to his principles." Wayne was suspended by Defendants Roberts and Wallace for nine school days for the following reasons: "attempting to incite a riot by parading the Confederate flag during lunch period/became insubordinate to administrator and disruptive in student resource center by continuing to incite student ..." Defendants recommended the expulsion of Wayne. Subsequent to Wayne's suspension, the media reported the events at Pine Ridge High School. A demonstration by the Ku Klux Klan followed.

One week after Wayne's suspension, Defendants filed a criminal complaint against Wayne, alleging that he disturbed a school function in violation of Fla. Stat. § 871.01. Plaintiff filed the instant suit in this Court on

---

1. Plaintiff also asserts a supplemental state tort claim for malicious prosecution in Count II.

July 15, 1996, seeking to recover compensatory and punitive damages for the alleged violation of Wayne's rights to free speech, peaceful assembly, due process and equal protection under 42 U.S.C. § 1983. Plaintiff also seeks to recover for the Defendants' alleged malicious prosecution of Wayne in filing the criminal complaint against him.

**Motions to Dismiss**

*A. § 1983 claims against the School Board and the administrators in their official capacity*

Count I of the Complaint asserts that the Defendants violated 42 U.S.C. § 1983 in depriving Wayne of his First, Fifth, and Fourteenth Amendment rights by disciplining him for displaying a Confederate flag. Over the last twenty years, the Supreme Court has defined the First Amendment protections available to public school students via three cases. *Compare Tinker v. Des Moines Indep. Sch. Dist.,* 393 U.S. 503, 504–06, 89 S.Ct. 733, 735–36, 21 L.Ed.2d 731 (1969) (school could not prohibit students from wearing black arm bands to protest Viet Nam war) *with Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 685, 106 S.Ct. 3159, 3165, 92 L.Ed.2d 549 (1986) (school could sanction student for lewd and indecent speech at school assembly) *and Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988)(school could censor content of school newspaper). In these cases, the Supreme Court has struck a delicate balance between recognition of students' constitutional rights to freedom of speech or expression and deference to school officials' duty to enforce discipline.

In *Tinker,* the Supreme Court upheld the students' right to wear black arm bands in protest against the war in Viet Nam, holding that unless the prohibited conduct would " 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' " the prohibition would violate the First Amendment. *Tinker,* 393 U.S. at 509, 89 S.Ct. at 738. In contrast, in *Hazelwood,* the Court upheld a school's decision to censor the content of a school-sponsored newspaper. 484 U.S. at 273, 108 S.Ct. at 571. The Court held that schools may control "the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* While students still enjoy First Amendment rights, these rights are curtailed somewhat by the Supreme Court's deference to school administrators' judgments as to what speech is appropriate in the public school context.

Under Eleventh Circuit precedent, a municipality or local governmental body may be held liable under § 1983 for a constitutional violation caused by: (1) a custom or policy of the local governmental body; or (2) an action taken or policy made by an official with final policy-making authority. *Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir.1994). In the instant case, Plaintiff acknowledges that municipal liability will not attach under the doctrine of *respondeat superior* and is not attempting to state a claim under such a theory.

The Defendants seek dismissal of the § 1983 claims against them, arguing that the Complaint fails to specifically allege that the existence or enforcement of a school board custom or policy which deprived Wayne of a federal right. The Defendants contend that the allegations against the School Board and against Roberts and Wallace in their official capacities fail to meet a heightened pleading requirement.

The Court rejects the Defendants' argument that a heightened pleading requirement exists for § 1983 allegations against local governments (or individuals in their official capacity). A Supreme Court case directly on point, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), expressly held just the opposite—that a federal court may not apply a "heightened pleading standard" to § 1983 claims alleging local government liability. As the Supreme Court explained, "[F]ederal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." Given the existence of a three-year old Supreme Court opinion directly on point, the Defendants' reliance on *Arnold v. Board of Education of Escambia County, Ala.,* 880 F.2d 305, 310 (11th Cir.1989) is misplaced.

Defendants argue that Plaintiff has alleged only a single incident of wrongful conduct, which is insufficient to establish the existence of a custom or policy. In response, Plaintiff contends that the Complaint sufficiently alleges an unconstitutional custom or policy in the form of an "unwritten ban" on Confederate flags and symbols (Doc. 1 ¶¶ 19, 20, 23). The Complaint also alleges that Wayne and four other students at Pine Ridge High School were suspended for violating this "unwritten ban" on Confederate symbols (¶¶ 22 & 23).

In light of the holding in *Tinker v. Des Moines Independent School District,* this Court finds that the Plaintiff has adequately pled allegations of a governmental custom or policy, *i.e.,* an "unwritten" ban on Confederate symbols, leading to the deprivation of Wayne's First Amendment rights. *See Tinker,* 393 U.S. at 504–06, 89 S.Ct. at 735–36 (school's prohibition on black arm bands worn to protest Viet Nam war violated students' First Amendments rights).

*B. § 1983 claims against individual administrators, Roberts and Wallace*

As discussed *supra,* a heightened pleading requirement does not apply to § 1983 claims made against local government officials in their official capacity, under *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, the Court notes that the holding in *Leatherman* does not control the issue of heightened pleading for allegations against government officials in their individual capacities. In *Leatherman,* the Supreme Court expressly refrained from deciding whether "qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." 507 U.S. at 167, 113 S.Ct. at 1162; *see also Arrington v. Dickerson,* 915 F.Supp. 1503, 1513 (M.D.Ala.1995) (holding that *Leatherman* does not offer much guidance to § 1983 qualified immunity cases); *Malone v. Chambers County Bd. of Comm'rs.,* 875 F.Supp. 773, 790 (M.D.Ala.1994) (finding that the holding in *Leatherman* did not repeal the heightened pleading standard in § 1983 actions where a defendant official is entitled to assert the defense of qualified immunity).

The Supreme Court reasoned that "unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman,* 507 U.S. at 166, 113 S.Ct. at 1162.

Because the Supreme Court has not established binding precedent on the issue, this Court is bound by the previous holdings of the Eleventh Circuit. Thus, the Court agrees with the reasoning applied by other district courts in the Eleventh Circuit faced with the same issue:

> *Leatherman* calls into question the validity of imposing a heightened pleading standard in any § 1983 case. However, absent further direction from the Supreme Court or the Eleventh Circuit, the court will apply the heightened standard where appropriate under current Eleventh Circuit law.

*Malone,* 875 F.Supp. at 790; *see also Arrington,* 915 F.Supp. at 1514. The Court finds that as to the § 1983 claims asserted against Roberts and Wallace in their individual capacities, Plaintiff is subject to a heightened pleading standard.

Roberts and Wallace contend that the Complaint alleges they violated abstract rights of "free speech, peaceful assembly, due process, and equal protection," which are not particularized enough to survive a heightened pleading standard. The Eleventh Circuit has affirmed the dismissal of civil rights complaints found to be "insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984)(holding limited to qualified immunity post–*Leatherman* ). The Eleventh Circuit has also held that in all complaints where liability is predicated upon § 1983, "some factual detail is necessary." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied sub nom. Deutcsh v. Oladeinde,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993). While the Court finds that Plaintiff's Complaint is factually specific, the Complaint fails to sufficiently allege any "clearly established" constitutional right that Roberts and Wallace violated in their individual capacities.

Roberts and Wallace argue that the doctrine of qualified immunity warrants dismissal of Count I against them in their individual

capacities. According to the Complaint, Roberts ordered Wayne and the other students displaying the Confederate flag to put the flags away and informed Wayne he would be suspended. ¶¶ 15–18. The Complaint further alleges that Roberts and Wallace formally suspended Wayne. ¶¶ 20, 36. Roberts and Wallace contend that the objective reasonableness of the suspension of Wayne is clear from the face of the Complaint because there is no support in existing case law, *i.e.,* a "clearly established right," for a student to have an unqualified right to display a confederate flag on school premises.

■ Government officials may be sued directly under 42 U.S.C. § 1983; however, they enjoy qualified immunity if they have acted in good faith in carrying out their duties. *Kubany v. School Board of Pinellas County,* 818 F.Supp. 1504, 1506 (M.D.Fla.1993)(citing *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985)). Under Eleventh Circuit precedent, a § 1983 litigant must overcome an arduous burden to defeat the defense of qualified immunity and recover monetary damages from the pocket of a government official.

The purpose of qualified immunity is to shield government officials performing discretionary functions from civil trials and liability if their conduct does not violate " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The law of qualified immunity is summarized in *Lassiter v. Alabama A & M University, Bd. of Trustees,* 28 F.3d 1146 (11th Cir.1994) (*en banc* ):

I. Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. The qualified immunity doctrine means that government agents are not always required to err on the side of caution. . . .

III. For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law. Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases . . .

General propositions have little to do with the concept of qualified immunity. If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant. The line is not to be found in abstractions—to act reasonably, to act with probable cause, and so forth—but in studying how these abstractions have been applied in concrete circumstances. And, as the en banc court recently accepted:

When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. *Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.*

For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*

*Id.* at 1149–50 (emphasis in original; internal references omitted). Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985).

■ In this case, the Court finds that Roberts and Wallace are entitled to dismissal on the basis of qualified immunity because the law is not so "clearly established" in such a "concrete and factually defined context" to make it obvious to all reasonable government actors that telling a public school student to

put away a confederate flag violated the First Amendment To the contrary, two appellate courts have affirmed district court findings that the display of a Confederate flag was a focal point of racial irritation, offensive to a racial minority, and contributed to violence and the disruption of the school. *Augustus v. School Bd. of Escambia County, Fla.,* 507 F.2d 152, 155 (5th Cir.1975) (district court found that the Confederate flag was racially irritating to many black students); *Melton v. Young,* 465 F.2d 1332, 1334 (6th Cir.1972) (Confederate flag was a "precipitating cause" of tension and disorder), *cert. denied,* 411 U.S. 951, 93 S.Ct. 1926, 36 L.Ed.2d 414 (1973). In *Melton,* the Sixth Circuit affirmed the district court's holding that a student's suspension was a legitimate exercise of a school official's inherent authority to curtail disruption elicited by wearing of the Confederate flag. 465 F.2d at 1334. In light of these holdings, the Court cannot find that the law is so "clearly obvious to all reasonable government actors" that telling a student to put away the Confederate flag, a symbol recognized by the former Fifth Circuit to be racially controversial, violated the First Amendment in a public school setting. The claims in Count I alleged against Roberts and Wallace in their individual capacities are due to be dismissed.

## C. Malicious prosecution claim against the Defendants

Count II of the Complaint alleges a state tort claim for malicious prosecution. The Court declines to exercise supplemental jurisdiction over the state tort claim because the claims will "substantially predominate over the claim over which the Court has original jurisdiction" for several reasons. 28 U.S.C. § 1367(c)(2).[2]

First, the qualified immunity defense does not apply to suits governed by state law. *D'Aguanno v. Gallagher,* 50 F.3d 877,

879 (11th Cir.1995). Therefore, the individual Defendants, Roberts and Wallace, would be forced to provide a defense in federal court on a state claim, even though the Court has dismissed all federal claims against them in their individual capacity. Such a result would circumvent the purposes of the qualified immunity doctrine, as set forth by the Eleventh Circuit in *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149–50 (11th Cir.1994)(*en banc*). The individual Defendants will be forced to spend much more defending the litigation in federal court rather than state court.

Second, the elements required to prove Count I (§ 1983 violation) and Count II (malicious prosecution) differ greatly. Under Florida law, "[i]n order to prevail in a malicious prosecution action, a plaintiff must establish that: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding." *Alamo Rent–A–Car, Inc. v. Mancusi,* 632 So.2d 1352, 1355 (Fla.1994); *Burns v. GCC Beverages, Inc.,* 502 So.2d 1217, 1218 (Fla.1986); *Adams v. Whitfield,* 290 So.2d 49, 51 (Fla.1974).

In the instant case, Plaintiff will be expected to introduce evidence of malice on the part of Roberts and Wallace to prove malicious prosecution, and thus may introduce evidence that would improperly prejudice the jury as to the § 1983 claim against the School Board.[3] More importantly, the Court

---

2. Alternatively the Court would dismiss Count II because Plaintiff has failed to comply with Fla. Stat. § 768.28(6) which provides that a suit can only be brought against the state or one of its agencies after the claimant has presented its written claim to the relevant agency and the Department of Insurance, and the agency or the Department denies the claim in writing. Fla. Stat. § 768.28(6)(a) (West Supp.1996). The Plaintiff concedes that a written claim for the

malicious prosecution against the School Board was not submitted to the Department of Insurance until September 27, 1996, well after the instant Complaint was filed on July 15,1996.

3. A municipality or local governmental body may be held liable under § 1983 for a constitutional violation official with final policy-making authority. *Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir.1994).

finds that the malicious prosecution claim would predominate over the § 1983 claim, thus, the Court declines to exercise jurisdiction over Count II.

The Court also finds that supplemental jurisdiction should be declined because the malicious prosecution claim is not "so related to claims in the action within [federal] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). According to the Complaint, more than one week passed before Defendants filed a criminal complaint against Wayne under Fla. Stat. § 871.01. During the ensuing week, the media reported the events at Pine Ridge High School and the Ku Klux Klan demonstrated. The expiration of one week between Wayne's suspension and the filing of charges, the subsequent demonstration at the school, and the pursuit of the criminal complaint under Fla. Stat. § 871.01, support the finding that the claims are not part of the same case or controversy.

*D. Punitive Damages*

The School Board and Roberts and Wallace in their official capacity move to strike the punitive damages claims in Counts I of the Complaint. Plaintiff states that no punitive damages are sought against the School Board (or the individuals in their official capacities), thus any such claim as to the School Board is due to be stricken.

Roberts and Wallace also seek to have all punitive damages claims against them in their individual capacities stricken. Since the Court has dismissed the individual capacity claims in Count I, the issue is moot. The Court does not pass on the portion of Defendants' Motions which seek to strike the punitive damages claims in Count II, as the Court has declined jurisdiction over the malicious prosecution claim.

**Based on the foregoing, it is ordered as follows:**

1. The School Board of Volusia County's Motion to Dismiss (Doc. 4) is DENIED in part and GRANTED in part. Plaintiff's claim for punitive damages against the School Board and Roberts and Wallace in their official capacities is STRICKEN. Count II of the Complaint as to the School Board and Roberts and Wallace in their offi-

cial capacities is DISMISSED. Pursuant to 28 U.S.C. § 1367(d), the period of limitations shall be tolled for a period of 30 days after it is dismissed.

2. Defendant Roberts' Motion to Dismiss (Doc. 6) is GRANTED in part. The claims in Count I against Defendant Roberts in his individual capacity are hereby DISMISSED, as are any attendant punitive damages claims. Count II of the Complaint as to Roberts is DISMISSED. Pursuant to 28 U.S.C. § 1367(d), the period of limitations shall be tolled for a period of 30 days after it is dismissed.

3. Defendant Wallace's Motion to Dismiss (Doc. 7) is GRANTED in part. The claims in Count I against Defendant Wallace in his individual capacity are hereby DISMISSED, as are any attendant punitive damages claims. Pursuant to 28 U.S.C. § 1367(d), the period of limitations shall be tolled for a period of 30 days after it is dismissed.