**Amy ANDRE, Plaintiff,**

v.

**Betty CASTOR, in her official and individual capacity, Harold Nixon, in his official and individual capacity, Paul A. Shideler, in his official and individual capacity, Henrietta Lange, in her official and individual capacity, Hans Resch, in his official and individual capacity, Eugene R. O'Casio, in his official and individual capacity, William F. Kelly, in his official and individual capacity, David P. Schenck, in his official and**

**individual capacity, Julie K. Morris, in her official and individual capacity, Thomas J. Tighe, in his official and individual capacity, and Gordon E. Michalson, Jr., In his official and individual capacity, Defendants.**

No. 97–42–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

March 27, 1997.

George Karl Rahdert, Cynthia L. Hain, Rahdert, Anderson, McGowan & Steele, P.A., St. Petersburg, FL, for plaintiff.

Henry A. Gill, Jr., Thomas Edward Allison, Attorney General's Office, Dept. of Legal Affairs, Tampa, FL, Henry Wallace Lavandera, University of South Florida, Office of the Gereral Counsel, Tampa, FL, for defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS.

KOVACHEVICH, Chief Judge.

This cause comes before the Court on a motion to dismiss the complaint (Docket No. 28) and supporting memorandum (Docket No. 29), filed by Defendants BETTY CASTOR (hereinafter Castor), HAROLD NIXON (hereinafter Nixon), PAUL A. SHIDELER (hereinafter Shideler), HENRIETTA LANGE (hereinafter Lange), HANS RESCH (hereinafter Resch), EUGENE R. O'CASIO (hereinafter O'Casio), WILLIAM F. KELLY (hereinafter Kelly), DAVID SCHENCK (hereinafter Schenck), JULIE K. MORRIS (hereinafter Morris), THOMAS J. TIGHE (hereinafter Tighe), and GORDON E. MICHALSON, JR. (hereinafter Michalson). Plaintiff AMY ANDRE (hereinafter Andre) filed a responsive memorandum (corrected version, Docket No. 37), and the Court held a hearing on March 21, 1997.

## ALLEGED FACTS

The above-entitled action stems from an incident on October 4, 1996, on the New College campus of the University of South Florida (hereinafter USF) in Sarasota, Florida. (Complaint at ¶ 17). Andre, managing editor of a school publication known as *The Pillowbook*, organized a party in the Palm Court area of the campus. (¶ 17, 20). Palm Court is a courtyard surrounded on three (3) sides by dormitories, one of which is called Pei Dorm West. (¶ 20). According to the complaint, Palm Court is used by New College students "for expressive activities, including sexually explicit films/videos." (¶ 20).

At or about 11:15 p.m. on the above date, Andre began showing a video entitled *Annie Sprinkle's Sluts and Goddesses Video Workshop of How to be a Sex Goddess in 101 Easy Steps*, (¶ 18, Exhibit No. 6), which she had previously shown with permission as part of a New College course titled *Lesbianism*. (¶ 18). This video is contained on a personal video cassette tape, which Andre apparently had copied from a rented or purchased copy of the video, as it is available in the Sarasota area. (Docket No. 2, p. 14 n. 5; Exhibit No. 6).[1] Andre projected the *Sluts and Goddesses* video onto an exterior wall of Pei Dorm West. (¶ 20).

About a half (½) hour into the presentation, campus police "entered the Palm Court area,

---

1. At the preliminary injunction hearing, the Court *sua sponte* raised the issue of whether Andre had a legitimate ownership interest in the video cassette tape because it was a personal copy instead of a rented or purchased one. However, a subsequently filed affidavit (Docket No. 22) of the copyright owner, Annie Sprinkle, led the Court to conclude that Andre's copying and exhibition of the video was in compliance with all applicable federal copyright laws and, therefore, Andre had standing to bring this action. (Docket No. 21).

stopped [Andre's] exhibition of the Video, threatening criminal prosecution, and seized the Video from [Andre] under threat of arrest." (¶ 22). The next day, Andre went the university police station and demanded the return of her tape. (¶ 23). However, to this day, the tape has yet to be returned to Andre and has been in the registry of the Court since January 21, 1997. (Docket No. 6, p. 4).

According to the complaint, the individual and collective actions of the eleven (11) named defendants caused deprivations of Andre's various constitutional rights, namely those arising under the First and Fourth Amendments, as incorporated through the Fourteenth Amendment. As such, the Court recites the extent of the factual allegations with regard to each defendant and indicates, in parenthesis, his or her numbered order in the caption of the complaint.

Defendant **Shideler** (# 3), a sergeant with the USF police department, ¶ 8, is alleged to be the one who concluded, after a brief viewing, that *Sluts and Goddesses* was pornographic and reacted as recited two (2) paragraphs above this one. (¶ 22). The complaint states that Shideler was "assisted" by Defendants **Lange** (# 4) (USF police officer, ¶ 9) and **Resch** (# 5) (USF police officer, ¶ 10). (¶ 22). **Shideler** is also alleged to have informed Andre two (2) days after the incident that, although there was no investigation against her, the tape was locked in the evidence closet. (¶ 24). Finally, **Shideler** received a memorandum from a local assistant state attorney who concluded that the university police had probable cause to seize the tape and that it was obscene. (¶ 26).

Two (2) other members of the USF police department are also named in the complaint: Defendants **O'Casio** (# 6) and **Kelly** (# 7). On October 7, 1996 (three (3) days after the incident), **O'Casio** (USF police sergeant, ¶ 11) told Andre that he and **Kelly** (director of police services and captain of USF's police department, ¶ 12) had watched *Sluts and Goddesses* and that **Kelly** had directed **O'Casio** to send the tape to the local state attor-

ney's office for a determination of obscenity. (¶ 25).

As to Defendant **Castor** (# 1), the president of USF (¶ 6), she is alleged to have convened a committee on October 31, 1996, (twenty-seven (27) days after the incident) to examine whether Andre violated the laws, rules, and/or regulations of New College, the State University System, and/or the State of Florida. (¶ 27). **Castor** is also alleged to have failed to reply to a letter from Andre dated November 16, 1996, inquiring whether USF intended to return her tape and/or prosecute her. (¶ 30).

The committee convened by Castor was to be chaired by Defendant **Nixon** (# 2), USF's vice president of student affairs (¶ 7), and comprised of Defendants **Schenck** (# 8) (dean and executive director of New College, ¶ 13) and **Morris** (# 9) (coordinator of New College's environmental studies program, ¶ 14). The only contact this "investigative" committee made with Andre was on November 7, 1996, when **Nixon** notified Andre about the investigation and the potential for her to be called to testify. (¶ 29).

The "investigative" committee was to make recommendations to **Castor** and Defendants **Tighe** (# 10) and **Michalson** (# 11) (hereinafter the "reviewing" committee) by November 25, 1995, regarding the appropriateness of administrative action against Andre. (¶ 27). Although the complaint does not specify what, if any, decision was reached by this "reviewing" committee, it does state that counsel for USF indicated to Andre's counsel that the university intended to proceed with the investigation as of December 23, 1996. (¶¶ 31–34).

Based on these allegations, Andre seeks: (1) a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that both the content and exhibition of the video are protected under the First Amendment and that the defendants unconstitutionally stopped, seized, detained, and banned the video (Count I); (2) a permanent injunction pursuant to Rule 65, Fed.R.Civ.P., that restrains the defendants from promulgating any policy or otherwise conducting themselves in a manner contrary to the declaratory judgment

(Count II); and (3) compensatory and punitive damages pursuant to 42 U.S.C. § 1983 from the defendants in their individual capacity based on Defendants **Shideler, Lange, O'Casio, Kelly,** and **Resch's** violation of Andre's First and Fourth Amendment rights, as incorporated through the Fourteenth Amendment, and Defendants **Castor, Nixon, Schenck, Morris, Tighe,** and **Michalson's** violation of Andre's First Amendment rights, as incorporated through the Fourteenth Amendment (Count III).

On January 24, 1997, this Court issued a preliminary injunction against the defendants, preventing them from proceeding with any administrative action against Andre. (Docket No. 21). The Court concluded, inter alia, that there was a substantial likelihood that Andre would prevail "on the merits of at least one (1) of her constitutional claims, namely the Fourth Amendment issue involving the seizure of the videotape and the failure of certain defendants, in their official capacity, to provide a prompt judicial determination of obscenity." (*Id.*). Specifically, the Court stated that this conclusion was "just clear" in light of "a constitutional case that's right on point," *Blount v. Rizzi*, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971). (Docket No. 26, pp. 50–51).

### STANDARD FOR DISMISSAL

Under *Conley v. Gibson*, a district court should not dismiss a complaint "for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts" that would entitle the plaintiff to relief. 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir. 1982). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require "a short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. at 103 (quoting Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, this Court will examine only the four (4) corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232 (M.D.Fla.1995). Also, the Court must accept a plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995).

### DISCUSSION

The Court will discuss the grounds for dismissal and other issues raised by the defendants in the order that they appear in their memorandum.

### I. Heightened Pleading Standard.

The first issue raised by the defendants is whether there is a heightened pleading requirement for section 1983 claims against state actors in their individual capacities. Both parties agree, and rightly so, that the Supreme Court of the United States has held that there is no heightened pleading requirement for section 1983 claims involving municipal entities. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Their disagreement lies in *Leatherman*'s application to the instant case, in that the Court reasoned that, because municipal liability was not specifically mentioned in Rule 9(b), Fed.R.Civ.P., the respective allegations need only comply with Rule 8(a), Fed.R.Civ.P. 507 U.S. at 167–69, 113 S.Ct. at 1163. However, because the Court specifically stated that it had "no occasion to consider whether ... qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials," *id.* at 165–67, 113 S.Ct. at 1162, this Court concludes that *Leatherman* does not apply to the instant case.

Rather, this Court is persuaded by the well-reasoned conclusion of another court in this district that section 1983 claims involving government officials in their individual capacities are subject to a heightened pleading standard. *Denno v. School Board of Volusia County*, 959 F.Supp. 1481, 1485 (M.D.Fla.1997) (Conway, J.). The *Denno*

court relied on pre-*Leatherman* holdings from the United States Court of Appeals for the Eleventh Circuit[2] and cited, as persuasive, authority from the Middle District of Alabama, reasoning that the affirmative defense of qualified immunity needs to be resolved as early as possible in the litigation process and, therefore, plaintiffs should be required to plead more than a "short and plain statement of the claim." *Id.;* Fed. R.Civ.P. 8(a)(2).

How much "higher" than "short and plain" must a section 1983 plaintiff such as Andre plead? The standard varies from case-to-case, but it is said that the allegations must be factually specific rather than conclusory. *Ross v. Alabama,* 893 F.Supp. 1545, 1554 (M.D.Ala.1995). Other circuits have stated that actions against governmental officials in their individual capacities must be pled "with sufficient precision to put defendants on notice of the nature of the claim and enable them to prepare a response and, where appropriate, a summary judgment motion on qualified immunity grounds." *Brown v. Frey,* 889 F.2d 159, 170 (8th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990) (citations and internal quotation marks omitted). As such, the Middle District of Alabama has required a plaintiff to "allege detailed facts as to why the defense of qualified immunity [could not] be sustained." *Ross,* 893 F.Supp. at 1554 (deeming plaintiffs' allegation that an employee of a county's department of human services "instructed" two (2) deputy sheriffs to unlawfully touch plaintiffs as conclusory and directing plaintiffs "to allege with specificity all the material facts on which they base their claim" against said employee). However, the heightened pleading standard requires "no more than that the plaintiff tell his [or her] story, relating the pertinent information that is already in his [or her] possession." *Hunter v. District of Columbia,* 943 F.2d 69, 76 (D.C.Cir.1991).

With regard to Count III, Andre's section 1983 claim (discussed below), this Court will analyze the sufficiency of her allegations in light of these standards.

*II. Section 1983: Causation.*

■ There are two (2) essential elements to a section 1983 action: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). There is no dispute that Andre has sufficiently alleged the first element, that each of the eleven (11) defendants acted under color of state law at all relevant times. However, the defendants advance three (3) disputes with regard to the second element, the first of which is causation.

■ The standard for causation in a section 1983 action against persons acting under color of state law is legal, or proximate, causation. *Williams v. Bennett,* 689 F.2d 1370, 1381 (11th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). Accordingly, "the inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." *Id.*

■ First, Defendants **Lange** and **Resch** argue that Andre's allegation that they "assisted" Shideler in stopping the exhibition of *Sluts and Goddesses* and seizing the tape without a warrant is insufficient, if true, to prove causation. Andre responds that this allegation is sufficient, even under a heightened standard, because it puts these defendants on notice that they assisted conduct alleged to be in violation of clearly established constitutional law. The Court concludes that the actions of **Shideler, Lange,** and **Resch** can fairly be read to be in concert. Although the word "assist" is conclusory, **Lange** and **Resch,** upon reading the com-

---

**2.** *E.g., Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied sub nom., Deutcsh v. Oladeinde,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993), cited in *Williams v. Alabama State University,* 865 F.Supp. 789 (M.D.Ala.1994).

plaint, could certainly ascertain that they are being sued for their role in stopping the exhibition and seizing the tape without a warrant. Thus, there is sufficient factual detail in the complaint to notify these defendants of the nature of the constitutional claims against them and frame an argument with regard to qualified immunity, discussed infra. Discovery can flesh out the balance of the details.

■ In a related argument about **Shideler**, the defendants argue that the complaint fails to allege an unconstitutional seizure because Andre voluntarily handed the tape over to **Shideler**. The Court easily rejects this contention. Andre alleges that she gave **Shideler** the tape under threat of arrest and criminal prosecution. Furthermore, Andre alleges that she demanded a return of the tape within one (1) day after the incident. As such, there are sufficient facts in the allegations to preserve the voluntariness issue (including the scope and/or withdraw of consent, *see Mason v. Pulliam*, 557 F.2d 426 (5th Cir.1977)) for discovery. The Court questions the defendants' reliance on: (1) *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976); (2) *United States v. Gonzales*, 79 F.3d 413, 421 (5th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 183, 136 L.Ed.2d 122 (1996); (3) *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir.1995); (4) *United States v. Miller*, 20 F.3d 926, 930 (8th Cir.1994), *cert. denied,* 513 U.S. 886, 115 S.Ct. 226, 130 L.Ed.2d 152 (1994); and (5) *United States v. Manuel*, 992 F.2d 272, 275 (10th Cir.1993). These criminal cases, respectively, involved: (1) consent to search a car, (2) consent to search a car and a person, (3) consent to search, which led to seizure of a shotgun, (4) consent to search a car, and (5) consent to search a person. None of these cases were civil in nature or involved consent to seize personal property alleged to have First Amendment value.

■ With regard to the allegations against Defendants **O'Casio** and **Kelly**, the Court concludes that they are sufficiently pled and state a section 1983 claim, including the element of causation. The alleged facts, if proven true, could support a finding that these two (2) defendants, as temporary custo-

dians of the tape, failed to secure a prompt judicial determination on the issue of obscenity. Indeed, according to the allegations, **O'Casio** and **Kelly** wholly relied on the state attorney's office to determine the issue rather than a judicial officer. To the extent that the defendants expected the local state attorney's office to schedule the necessary judicial determination, they simply cannot hide behind advice given by that office. The defendants' constitutional duties are non-delegable. *See Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir.1985). Causation issues with regard to the duties and responsibilities of Defendants **O'Casio** and **Kelly** can be further explored during the discovery process.

■ Next, Defendant **Castor** contends that the allegations regarding her convening an "investigative" committee which was to report to herself and Defendants **Tighe** and **Michalson**, the "reviewing" committee, would not support a finding of causation if proven true. The Court disagrees. **Castor's** decision to refer the matter to a committee is tantamount to administrative delay, which could constitute a constitutional deprivation in and of itself under *Blount v. Rizzi*, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971).

■ Just as the allegations against **Castor** are pled with sufficient factual detail, the allegations against **Defendants Nixon, Schenck,** and **Morris** are also pled with sufficient factual detail. As members of the "reviewing" committee, these members are alleged to have contributed to the administrative delay by their failure to recommend immediate action by a decision maker. The allegation regarding chairperson **Nixon's** contact with Andre supports an inference that the committee was reviewing the matter as directed by **Castor.** Although the balance of the details relating to causation should be fleshed out in discovery, these defendants have been put on notice about their role in Andre's claims to the extent of her knowledge.

■ The Court agrees with Defendants **Tighe** and **Michalson**, however, that the allegations against them are conclusory and lack sufficient factual detail to support a

finding of causation, even if proven true. Indeed, the complaint merely states that the "investigative" committee was to make a recommendation to **Tighe** and **Michalson** by November 25, 1996. However, there is no allegation that **Tighe** and **Michalson**, along with Castor, actually convened to review any recommendation. For all the Court knows, the "investigative" committee could have been granted an extension of time by Castor and had not even formulated a recommendation for the "reviewing" committee as of the date this action was filed. Further, the allegations with regard to counsel for USF's communication with Andre's counsel fail to support an inference that the "reviewing" committee had convened. Counsel for USF allegedly stated that the matter was still under "investigation," not "review."

### III. Section 1983: First Amendment Deprivation.

■■■ The defendants argue that Andre fails to state a section 1983 claim based on the First Amendment, as incorporated through the Fourteenth Amendment, arguing that "[n]o one has a constitutional right to project sexually explicit and indecent films on to an outside wall of a public university, let alone on to the outside walls of student dormitories at New College" before an audience that includes minors. (Docket No. 29, p. 11). This may very well be true under certain circumstances. However, assuming the truth of the facts in this case, Palm Court was treated by the university as a place where First Amendment activities, including the showing of sexually explicit films, were tolerated. As such, USF had "created a forum generally open to student groups," including "forms of speech and association protected by the First Amendment" as to "persons entitled to be there." *Widmar v. Vincent*, 454 U.S. 263, 268–69, 277, 102 S.Ct. 269, 273–74, 278, 70 L.Ed.2d 440 (1981). Furthermore, there were no prophylactic regulations confronting Andre prior to showing the video; she followed campus procedure when organizing the party. Nevertheless, the university police halted Andre's expression based on its content

and prevented the showing of *Sluts and Goddesses* from occurring in any other time, place, or manner on school grounds. Thus, Andre easily states a claim for a First Amendment deprivation.

■■■ The defendants next point to relevant provisions in the Student Affairs Chapter of the Florida Administrative Code, which subject students to disciplinary action for "the display of sexually explicit or suggestive materials[.]" Fla. Admin. Code § 6C4–6.021 (1)(q). They argue that USF has a legitimate interest in enforcing this provision in order to deter the "open, non-contained [sic] public display of lewd and indecent materials." Again, the defendants may be right. However, in this case, the defendants are alleged to have failed to offer Andre the option of "containing" her expression in a more appropriate environment. It is the defendants' "all or nothing" approach that constitutes a First Amendment claim, and the defendants' page-long recitation of *Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 681–85, 106 S.Ct. 3159, 3163–65, 92 L.Ed.2d 549 (1986), where the Court upheld the constitutionality of disciplining a high school student for a sexually explicit speech to an audience of persons known by the speaker to be minors, is not well-taken.[3]

### IV: Section 1983: Fourth Amendment Deprivation.

■■■ Just as Andre easily states a claim for a First Amendment deprivation, she easily states a claim for a Fourth Amendment violation. Indeed, it was this ground that the Court specifically mentioned in its order granting Andre's application for a preliminary injunction. The defendants first argue that this case is "readily distinguishable" from cases requiring advanced judicial determinations of obscenity, in that there were children in the audience. However, the Court will not entertain the merits of this argument. The defendants have ventured outside the four (4) corners of the complaint, in that it does not state that there were

**3.** Equally as unhelpful to the Court is *American Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990), *cert. denied*, 500 U.S. 942, 111 S.Ct. 2237, 114 L.Ed.2d 479 (1991).

children present in Palm Court. Therefore, this issue must wait until after discovery.

 Next, the Court disagrees with the defendants' assertion that, because there was no ban on large quantities of expressive materials, there was no requirement of a prompt, judicial determination of obscenity, either pre- or post-seizure. Rather, the Court's review of applicable case law leads it to conclude that the seizure of one (1) videotape, even if other copies of *Sluts and Goddesses* are available to Andre and the public, presumptively requires both a warrant and a prompt, post-seizure, judicial determination of obscenity. *Heller v. New York*, 413 U.S. 483, 492, 93 S.Ct. 2789, 2794–95, 37 L.Ed.2d 745 (1973) (stating that "the seiz[ure] of a single copy of a film for the bona fide purpose of preserving it as evidence in a criminal proceeding, particularly where … there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film …. [and][i]f such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible"). Andre therefore states a claim for deprivation of her Fourth Amendment rights, as incorporated through the Fourteenth Amendment. Discovery is needed to paint a more complete picture before the Court decides whether Andre's case dictated an application of the exception rather than the rule.

 For the same reasons expressed *supra*, the Court summarily rejects the defendants' assertion that the defendants' constitutional obligations were discharged upon sending Andre's copy of *Sluts and Goddesses* to the local state attorney's office for a determination of obscenity. Similarly, the defendants' argument that the university permissibly retained the tape as the "best evidence" for its administrative investigation[4] is without merit. With regard to the "best evidence" issue, neither the Federal nor Florida

Rules of Evidence require the original tape as evidence for trial. A duplicate of the tape would be just as admissible as the one seized from Andre, especially if Andre retained possession of the original and was notified that the contents of the tape would be at issue. Fed.R.Evid. 1001 (defining "photographs" to include "video tapes"), 1002 (stating the general rule that an original photograph is required to prove its contents), 1003 (declaring that a duplicate is just as admissible as an original "unless … a genuine question is raised as to the authenticity of the original"), 1004 (carving out another exception to the general rule by deeming admissible "other evidence of the contents of a … photograph" when the party against whom the photograph will be offered is under the control of the original); *Fla. Stat.* § 90.951–.954 (essentially the same as the above-recited federal rules).

With regard to the defendants' argument that they retained the tape for an administrative investigation, rather than a criminal prosecution of obscenity, the allegations of the complaint dictate that certain defendants did, in fact, deem the tape obscene and retained it as evidence for that very purpose. The Court need not, then, address the issue of whether *any* type of proceeding relating to the contents of the tape would require the same or similar level of constitutional procedure that is associated with a criminal obscenity proceeding.

### V. *Qualified Immunity.*

As to this key issue, the Court has reviewed the arguments of counsel, both oral and written, and the relevant case law. However, because the defendants indicated in open court that they would soon be filing a motion for summary judgment on the issue of qualified immunity, the Court defers a determination on the merits of the defense until it has a more complete factual record.[5] This deferral is not inconsistent with the notion that the issue of qualified immunity should be resolved as early as possible in the case in order to spare the defendants from

---

4. Fla. Admin. Code § 6C4–6.0021(1)(q).

5. Neither the defendants nor Andre need to submit new copies of cases and authorities that they have already submitted to the Court.

the burdens of litigation; the defendants are already subject to the discovery process since they were sued in their official, as well as their individual, capacity.

*VI. Eleventh Amendment Immunity.*

 The defendants could not plausibly convince the Court that the Eleventh Amendment bars jurisdiction over any of the counts in this case. In Counts I and II, the defendants were sued in their official capacity for declaratory and injunctive relief, which overcomes the State's immunity. *Kentucky v. Graham,* 473 U.S. 159, 170 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985). As to Count Ill, Andre's section 1983 claim for damages against the defendants in their individual capacities is viable because "the Eleventh Amendment never applies unless a judgment for money payable from the state treasury is sought." *Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982).

To the extent that the Court has not discussed any other arguments advanced by the defendants in support of their motion to dismiss, the Court rejects them as without merit and unworthy of discussion.

## PRELIMINARY PRE–TRIAL CONFERENCE

As a follow up to the preliminary pre-trial conference conducted on March 21, 1997, the Court hereby memorializes, clarifies, and supplements its oral directive as follows:

(1) The parties are directed to submit a joint status report to the Court, filed no later than April 3, 1997;[6]

(2) This report shall contain the parties' joint statements (or separate statements if there are unresolvable disagreements) as to the following issues:

 (a) Where are the parties going with this case? Has settlement been discussed? Is settlement likely or unlikely? Is an expedited trial requested? If so, when? Would mediation do any good? If so, when?

 (b) What counts, if any, will become moot if this case is not resolved prior to Andre's graduation, expected to occur on May 23, 1997?

 (c) Even if this case were to be resolved prior to May 23, 1997, does USF and/or New College intend to proceed with administrative action against Andre if the defendants prevail and the preliminary injunction is vacated?

 (1) If this case is resolved after graduation, and the defendants prevail, could USF and/or New College proceed administratively against Andre? Would it/they?

 (d) How does the Court's order on the motion to dismiss affect the scope of this case? Will the plaintiff amend her complaint?

 (1) How will these events affect the timing of this case?

 (e) Do the defendants still intend to file a motion for summary judgment on the issue of qualified immunity? If so, when?

 (1) How would this motion affect the timing of this case?

 (f) Does Andre intend to file a dispositive motion? If so, when?

 (1) How would this motion affect the timing of this case?

 (g) What, if any, factual and legal issues can be stipulated or otherwise refined? If this case can be pared down, how does that affect the trial estimate?

(3) Counsel for the parties must certify, in writing, that they have met face-to-face to discuss and answer these issues and have otherwise complied with the Court's oral directives on March 21, 1997. This certification shall be submitted at the end of the joint status report.

Accordingly, it is

**ORDERED** that the defendants' motion to dismiss (Docket No. 28) be **GRANTED IN PART**, in that defendants **Tighe** and **Michalson** are dismissed from the complaint in their individual capacities (they are retained

---

**6.** Although the Court designated April 1 as the deadline in open court, the Court extends that deadline by two (2) days due to the timing of this Order.

in their official capacities), and **DENIED IN PART** as to all other asserted grounds; the Plaintiff be granted ten (10) days leave from the date of this Order to file an amended complaint; and the parties shall submit their joint status report as directed in open court and this Order.