465 F.2d 1332
 Bryan MELTON and Wife, Mrs. Bryan Melton, on behalf of their
minor son, Rod Melton, Plaintiffs-Appellants,
v.
Corley R. YOUNG et al. (Chattanooga, Tenn. Board of
Education, Commissioner and Principal),
Defendants-Appellees.
 No. 71-1704.
 United States Court of Appeals,
 Sixth Circuit.
 Aug. 30, 1972.
 
 1
 Jack Kershaw, Nashville, Tenn., for plaintiffs-appellants.
 
 
 2
 Raymond B. Witt, Jr., Chattanooga, Tenn., John W. Murrey, III, Witt, Gaither, Abernathy & Wilson, Chattanooga, Tenn., on brief, for defendants-appellees.
 
 
 3
 Before MILLER and KENT, Circuit Judges, and KEITH,* District Judge.
 
 
 4
 KEITH, District Judge.
 
 
 5
 This is an appeal from a judgment of the District Court for the Eastern District of Tennessee, 328 F.Supp. 88, determining that the suspension of appellant Rod Melton from Brainerd High School at Chattanooga, Tennessee was not violative of his constitutional rights.
 
 
 6
 Appellant[1] instituted this action in the District Court under 42 U.S.C. Sec. 1983 for declaratory and injunctive relief alleging appellant's various constitutional rights were violated because the principal of his high school suspended him for wearing an emblem depicting a Confederate flag on the sleeve of his jacket.
 
 
 7
 The background of this case is recited in the extensive opinion entered by the District Judge and we will merely capsulize the factual circumstances leading to appellant's suspension.
 
 
 8
 Brainerd is a public high school in the city of Chattanooga, Tennessee. Until 1966 Brainerd was operated as an all white school which had adopted as its nickname the word "Rebel" and used the Confederate flag as the school flag along with the song Dixie as its pep song. The school has been attended by both white and black students since 1966; by 1969 the student body consisted of 170 black and 1224 white students.
 
 
 9
 The record indicates that with the advent of the 1969 school year the student body became racially polarized as a result of continuing controversy over the use of the Confederate flag and the song Dixie at various school functions. It also appears that on October 8, 1969 demonstrations took place at the school which disrupted classes and that on the evening of the same day a motorcade drove through various parts of the city waving Confederate flags. Thereafter various disturbances took place in the city finally culminating in the imposition of a city-wide curfew for four nights from October 13 through October 17, 1969. The District Court also found that throughout the remainder of the fall semester considerable racial tension existed within the student body which continued on into the following spring. During this period it was necessary to call for police assistance amid several confrontations and also to close the school for the purpose of restoring order and calming tensions.
 
 
 10
 In May, 1970, the Brainerd school administration and P.T.A. appointed a committee of citizens to study the difficulties of the past year and recommend remedial action for the ensuing year. Among the conclusions of the committee were the nickname "Rebel," the song Dixie, and the Confederate flag were precipitating causes of tension and disorder within the school. As a corrective measure the committee recommended that the use of the Confederate flag as a school symbol and the use of the song Dixie as the school pep song be discontinued but that the nickname "Rebel" be retained. These recommendations were adopted as official policy by the School Board at its meeting on July 8, 1970 along with the directive to school administrators that each principal develop and disseminate within the student body a "code of conduct"[2] consistent with the recommendations by the opening of the school in September, 1970. It is this code and the consequences of its enforcement that gave rise to this lawsuit.
 
 
 11
 Appellant, after both he and his parents were informed of the new rules, wore a jacket to school with an emblem depicting a Confederate flag on one sleeve. He was asked to remove the emblem or cease wearing the jacket while in school by the principal but declined to do so. After he was allowed to return to class several complaints from both faculty and students caused the principal to call appellant to his office and request him to remove the jacket, which request was again refused. The principal then indicated that it was his judgment that the emblem was "provocative" and in violation of the school code and thereupon he directed that appellant either remove the jacket or leave the school. Appellant chose to absent himself from the campus.
 
 
 12
 The following day appellant presented himself at the school with the same jacket and emblem and upon being sent to the principal's office and being requested to remove the jacket stated that he was merely demonstrating pride in his Confederate heritage by the wearing of the flag and that he had no other motive. Appellant was then told to leave school and not return until he was willing to stop displaying the Confederate emblem while in school. The above two suspensions occurred on September 8 and September 9, 1970 respectively and letters were sent to appellant's parents on both occasions stating the reasons for the suspension.
 
 
 13
 The District Court issued an opinion finding, inter alia, that the portion of the school regulation forbidding students from wearing "provocative symbols" upon their clothing was unconstitutionally "vague, broad, and imprecise" in derogation of the precepts of both the First and Fourteenth Amendments to the United States Constitution. Appellee does not argue this determination on appeal hence we will not discuss it.
 
 
 14
 Although the plaintiff-appellant was suspended pursuant to a regulation that was subsequently determined to be unconstitutional, the District Court apparently felt that the suspension was nevertheless valid for the reason that the suspension would have been a legitimate exercise of the school officials' inherent authority to curtail disruption of the educational process even in the absence of a regulation. This Court agrees with the District Court's finding.
 
 
 15
 Turning now to the substance of this appeal we note that counsel for appellant has engaged in a proselytizing diatribe bordering on the edge of uncivility at the most, and poor professional taste at the least, in an effort to expand the issues facing this Court. In our view the only question for determination is whether a public high school student's suspension for his unwillingness to stop wearing a Confederate flag patch was violative of the First and Fourteenth Amendments under the circumstances in existence at the time of the suspension?
 
 
 16
 This is a troubling case; on the one hand we are faced with the exercise of the fundamental constitutional right to freedom of speech, and on the other with the oft conflicting, but equally important, need to maintain decorum in our public schools so that the learning process may be carried out in an orderly manner. It is abundantly clear that this Court will not uphold arbitrary or capricious restrictions on the exercise of such jealously guarded and vitally important constitutional tenets. However, it is contended here that the circumstances at the time of appellant's suspension were such that the District Court could properly find that
 
 
 17
 "[t]he Principal had every right to anticipate that a tense, racial situation continued to exist at Brainerd High School as of the school [sic] in September of 1970 and that repetition of the previous year's disorders might reoccur if student use of the Confederate symbol was permitted to resume."It is our view after an independent examination[3] of the record that the conclusions of the District Court are fully supported by the evidence.
 
 
 18
 In the leading case of Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, the Supreme Court stated, inter alia, that student conduct which "materially disrupts class work or involves substantial disorder or invasion of the rights of others" is not afforded the cloak of protection provided by the First Amendment. Recognizing the problems discussed in Tinker, this Court, in the case of Guzick v Drebus, 431 F.2d 594 (6 Cir. 1970) indicated its belief that
 
 
 19
 ". . . the potentiality and imminence of the admitted rebelliousness in the Shaw students support the wisdom of the no-symbol rule. Surely those charged with providing a place and atmosphere for educating young Americans should not have to fashion their disciplinary rules only after good order has been at least once demolished."
 
 
 20
 In this regard it should be noted that District Judge Frank Wilson's opinion reflects a careful and studied consideration of the precepts of Tinker and its application to the case before the Court. In the language of the trial court
 
 
 21
 "Unlike the Tinker case, where the Court found no evidence of either actual or potential disruptive conduct, but only an 'undifferentiated fear or apprehension of disturbance,' the record in the present case reflects quite clearly that there was substantial disorder at Brainerd High School throughout the 1969-70 school year, that this disorder most materially disrupted the functioning of the school, so much so that the school was in fact closed upon two occasions, that much of the controversy the previous year had centered around the use of the Confederate flag as a school symbol and that the school officials had every right to anticipate that a tense racial situation continued to exist as of the opening of school in September of 1970."
 
 
 22
 We conclude that this determination is fully supported by the evidence presented to the Court. We also think that Judge Wilson was correct in his determination that Guzick, supra, permitted the school authorities to stave off any potential danger resulting from appellant's conduct.[4]
 
 
 23
 It is therefore our conclusion that under all of the circumstances herein presented that appellant's suspension was not violative of his First and Fourteenth Amendment rights and that the judgment below was proper.
 
 
 24
 Affirmed.
 
 
 25
 WILLIAM E. MILLER, Circuit Judge (dissenting).
 
 
 26
 The plaintiff in this case, Rod Melton, a student at Brainerd High School in Chattanooga, was suspended from school by the Principal because of his refusal to cease wearing a small shoulder patch sewn on one sleeve of his jacket and depicting the Confederate Flag. The sole reason for such suspension, as found by the district court and established by the evidence, was that the student, in the judgment of the Principal, had violated that portion of a school code of conduct which provided as follows: "Also, provocative symbols on clothing will not be allowed." The district court held, and I think correctly so, that this regulation was invalid and unenforceable because of its vagueness and lack of specificity. If the rule under the sole authority of which the student was suspended is invalid because it infringed upon the rights of the student to freedom of speech and expression, as the district court clearly held, it follows, in my opinion, that the student was entitled to have the suspension itself declared illegal and to have the benefit of the injunctive relief which he sought by his complaint.
 
 
 27
 It is interesting to note that the district court, in invalidating this provision of the code, stated:
 
 
 28
 Although elsewhere in the regulations Confederate symbols were barred from use as school symbols and although there is evidence that the words 'provocative symbols' were construed by the school principal to mean 'that which would cause a substantial disruption of the student body,' such an interpretation is subjective to the principal, for nowhere in the regulatory scheme are the words 'provocative symbols' defined.
 
 
 29
 Yet the district court proceeded in its opinion to find that the Principal had every reason to believe, because of the disturbances which occurred in the prior school year, that the wearing of the shoulder patch was provocative and might lead to a disruption of the proper functions of the school. If his judgment in construing the regulation was subjective to him when he undertook to apply the code of conduct and assigned such code as the sole reason for suspension, it is difficult for me to fathom why his judgment should not be regarded equally as subjective in attempting to assess the validity of the suspension upon the hypothetical assumption of the district court that the Principal could have acted, although he did not, on the basis of his inherent authority over the operation of the school.
 
 
 30
 Since the Principal acted pursuant to the regulation alone and that regulation is void, it necessarily follows that the student's constitutional rights were infringed and that he is entitled to appropriate relief. One cannot escape the conclusion that if the regulation itself is void on its face it cannot be validly applied in fact as the Principal in this case sought to do.
 
 
 31
 But even accepting the district court's premise that the Principal's action in suspending the student because of his refusal to remove the emblem is not dependent upon the validity of the regulation, I still hold the view that the district court's conclusion that the student's constitutional rights were not infringed is wrong.
 
 
 32
 I do not in any way quarrel with the finding of the district court with respect to the tense racial situation and disturbances which disrupted the school in the 1969-70 school year. As the district court, as well as the special Citizens Committee, found, the disturbances which occurred during that year were provoked primarily because of the use of a number of official or semi-official school symbols which appeared to be offensive to a minority group of the students in the school, including (a) the name "The Rebels" to designate the school's athletic teams; (b) the song "Dixie"; and (c) the "Confederate Flag." No finding was made with regard to the individual wearing of shoulder patches or insignia. It was recommended by the Committee, followed by later approval by the Board of Education, that the name "Rebel" or "Rebels" be retained, but that the Confederate Flag as a school symbol and the use of the song "Dixie" as a school pep song should be discontinued. These recommendations were implemented as codes of conduct at each of the schools, including the provision with respect to "provocative symbols" which the district court has held to be invalid.
 
 
 33
 The evidence in this case clearly brings it within the ambit of Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). It is my firm conviction that the Principal in suspending the student simply over-reacted and was motivated by the kind of "undifferentiated fear or apprehension of disturbance" which the court in Tinker held to be insufficient to overcome the right to freedom of expression. True enough, in this case the Principal was aware of the disturbances which had occurred during the prior school year, but he failed to take into account, in acting so hastily and precipitately, the following differentiating factors which appear to me to be of controlling significance:
 
 
 34
 1. The protests of the previous year were against a group of school symbols which by long usage and custom, if not by express official sanction, carried the impact of official sanction, whereas the wearing of the small sleeve insignia in this case by a single student could in no way represent an official ruling or have the appearance of doing so.
 
 
 35
 2. In the early part of the 1970-71 school year (in September) a football game was played by the school team when some students imprudently and in violation of the school's code of conduct waved Confederate flags, with no resulting protests or outbreaks of violence, indicating a lessening of racial tension at the school.
 
 
 36
 3. In the interim between school years, the Board of Education, acting upon the recommendation of a citizens committee which had made an intensive study of the events of 1969-70, mandated the discontinuance at Brainerd of the song "Dixie" and the Confederate Flag as school symbols, but retained the designation of "Rebels" for the school's athletic teams. If such continued use officially of a term equally as suggestive of the Confederacy as the flag caused no disruption, it is difficult to conceive how the wearing of a confederate flag insignia could be seriously taken as disruptive.
 
 
 37
 4. There was no finding by the Committee that the wearing of confederate symbols on clothing by individual students as matters of personal choice had contributed to the previous trouble or that it should be prohibited for the future.
 
 
 38
 5. The complaints received by the Principal concerning this student's display of the Confederate Flag on his sleeve were, at best, minimal if not trivial.
 
 
 39
 6. As of the time this student was suspended there had been no acts of violence at the school and no significant threats of disruption, despite the continued "official" use of the team name "Rebels" and the events at the opening football game. There was every reason to believe that the official steps taken by the School Board in abolishing the school song and flag had satisfied the demands of those who protested the year before.
 
 
 40
 7. The nature of the "symbolism" in this case, (entitled under Tinker to the same reverence as "pure speech") is of significance: It was small; it was worn as a part of an article of clothing; and it had no inherent qualities for causing disruption or disturbance.
 
 
 41
 8. The emblem was worn by the student in a quiet, peaceful and dignified manner with no untoward gestures or remarks.[1]
 
 
 42
 9. The Principal conducted no substantial inquiry to ascertain the true facts as to whether the wearing of the insignia would lead to further trouble.
 
 
 43
 The fact is that despite the racial strife of the year before the circumstances were altogether different in the school year beginning in the fall of 1970, and there is no substantial basis to support the Principal's apprehension and fear that a small emblem worn by a single student on the sleeve of his jacket, which was merely symbolic of one of the historic facts of American life, would activate anew the kind of turmoil which had previously existed and which had been caused by entirely different circumstances. After all, it should be emphasized, the school symbols which were discontinued, such as the song "Dixie" and the Confederate Flag, at least bore the appearance of officialdom and could hardly be compared with the personal choice of a single student to decorate his jacket with a harmless emblem of the Confederate Flag.
 
 
 44
 The language of the Fifth Circuit in Burnside v. Byars, 363 F.2d 744, 748 (1966), appears to me to be pertinent in the present context:
 
 
 45
 . . . . Thus it appears that the presence of "freedom buttons" did not hamper the school in carrying on its regular schedule of activities; nor would it seem likely that the simple wearing of buttons unaccompanied by improper conduct would ever do so. Wearing buttons on collars or shirt fronts is certainly not in the class of those activities which inherently distract students and break down the regimentation of the classroom such as carrying banners, scattering leaflets, and speechmaking, all of which are protected methods of expressions, but all of which have no place in an orderly classroom. If the decorum had been so disturbed by the presence of the "freedom buttons," the principal would have been acting within his authority and the regulation forbidding the presence of buttons on school grounds would have been reasonable.
 
 
 46
 Since no question is made on appeal as to the validity of the district court's ruling in striking down the "provocative symbol" regulation, I would reverse the remainder of the judgment and remand the case with directions to modify the judgment below so as to grant the injunctive relief sought and for further proceedings on the issue of damages.
 
 
 
 *
 Honorable Damon J. Keith, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 When used through this opinion "appellant" refers to the minor, Rod Melton
 
 
 [2]
 Relevant portions of the code provided as follows:
 a) "Also, provocative symbols on clothing will not be allowed."
 b) Re: Brainerd High School ....year 1970-71
 SYMBOLS:
 According to the Board of Education, July 8th, 1970, meeting the status of symbols for Brainerd High School is as follows:
 The Confederate Flag and Confederate Soldier cannot be used as symbols for any public school in Chattanooga, therefore, all displays of the Flag and Soldier are removed from the school premises and cannot be used in any display where Brainerd is involved.
 SONG DIXIE:
 The song "Dixie" can no longer be used as a fight or pep song at Pep Meetings, Athletic contests or other school functions. It may be played in concert when other music of similar kind composes the program.
 
 
 [3]
 Edwards v. South Carolina, 372 U.S. 229, 235, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Jacobellis v. Ohio, 378 U.S. 184, 189, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964)
 
 
 [4]
 See also Norton v. Discipline Committee of East Tennessee State University, 419 F.2d 195 (6th Cir. 1969)
 
 
 [1]
 There was evidence pro and con as to the student's conduct in connection with prior racial situations, but the district court made no finding, and the record justifies none, that he was a troublemaker or that he wore the insignia other than for the purposes stated by him. His stated purpose was to indicate his pride in his Confederate heritage