[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/26/99
THOMAS  K. KAHN
CLERK

_____

No. 98-2718
_____

D. C. Docket No. 96-763-CIV-ORL-22B

LINDA DENNO, as parent, legal guardian and
next friend for Wayne Denno,

Plaintiff-Appellant,

versus

SCHOOL BOARD OF VOLUSIA COUNTY, FLORIDA;
DENNIS ROBERTS, an individual, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 26, 1999)**

Before ANDERSON, Chief Judge,  BLACK, Circuit Judge, and FORRESTER*,
District Judge.

ANDERSON, Chief Judge:

_____
* Honorable J. Owen Forrester, U. S. District Judge for the Northern District  of
Georgia, sitting by designation.

Appellant, Linda Denno as parent and next friend for Wayne Denno ("Denno"), filed this complaint against Volusia County School Board ("Board") and Assistant Principals Dennis Roberts and Robert Wallace ("individual defendants") alleging deprivation of First Amendment rights in violation of 42 U.S.C. § 1983. With respect to the § 1983 claim against the individual defendants, the district court dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the basis of qualified immunity. With respect to the § 1983 claim against the Board, the district court granted summary judgment in favor of the Board. Denno appeals.

We address two discrete issues on appeal.[1] First, Denno contends that the district court erred in dismissing the § 1983 claim as to the individual defendants pursuant to Fed.R.Civ.P. 12(b)(6) on the basis of qualified immunity. Second, Denno argues that the district court erred in granting summary judgment in favor of the Board on the § 1983 claim. We address each issue in turn.

## I.  QUALIFIED IMMUNITY FOR THE INDIVIDUAL DEFENDANTS

Qualified immunity shields government officials from both suit and liability if their conduct violates no clearly established right of which a reasonable person would have known. Santamorena v. Georgia Military College, 147 F.3d 1337,

---

[1] We reject Denno's other arguments on appeal without need for discussion.

1339-40 (11th Cir. 1998)(citing Williams v. Alabama State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997)).  Whether the complaint alleges the violation of such a right is a question of law subject to de novo review.  Id.  The district court dismissed Denno's claim against the individual defendants pursuant to Fed.R.Civ.P. 12(b)(6) based on qualified immunity.  In the posture of this case, we are required to assume all reasonable inferences from the complaint in favor of Denno.  Id.  We briefly summarize the facts alleged in the complaint that are relevant to this issue.

At the time of the events giving rise to the instant case, Wayne Denno was a minor and a student at Pine Ridge High School.  Dennis Roberts and Robert Wallace were assistant principals at that school.  As a hobby, Wayne Denno had cultivated a keen interest in Civil War history.  In his free time, Denno participated in Civil War reenactments and living histories.  His hobby led him to join a reenactment group known as the  Florida Light Artillery, Battery B, with which he participated in Civil War  reenactments and living histories both within Florida and elsewhere in the South.

On December 13, 1995, during an outdoor lunch break at school, Wayne Denno was quietly conversing with a small group of friends, discussing his avocation of Civil War history and his hobby as a Civil War reenactor.  As part of this discussion, Wayne Denno displayed to his friends a 4" x 4" Confederate battle

3

flag as he discussed historical issues of Southern heritage. Without any provocation or disruption, defendant Roberts approached the small group of Denno's friends, noticed that Denno was holding the 4" x 4" Confederate flag, and ordered Denno to put the flag away. When Denno tried to explain the historical significance of the flag, Roberts ordered Denno to accompany him to an administrative office and on the way there advised Denno that he was suspended from school. Denno alleges that his suspension constituted an unconstitutional deprivation of his First Amendment rights.

The law relevant to this issue begins with Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733 (1969). In Tinker, several Iowa high school and junior-high school students were suspended for wearing black armbands to school in protest of the Vietnam War. The Supreme Court found that the students "merely went about their ordained rounds in school" and "neither interrupted school activities nor sought to intrude in the school affairs or lives of others" by their wearing of the black cloth. Id. at 514, 89 S.Ct at 740. The Court held that a student has a First Amendment right to display at school a symbol, such as the one at issue in the instant case, notwithstanding the school officials' fear that display of the symbol would create a disturbance, so long as

4

there was no more than an "undifferentiated fear or apprehension of disturbance."

Id. at 508, 89 S.Ct. at 837. On the other hand, the Court in Tinker indicated that:

> To justify prohibition of a particular expression of opinion, it [the state in the person of the school official] must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly, where there is no finding and no showing that engaging in the forbidden conduct would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school" the prohibition cannot be sustained

Id. at 509, 89 S.Ct. at 738. (quoting Burnside v. Byars, 363 F.2d 744, 749 (5th Cir. 1966)). Therefore, Tinker clearly establishes the law: a student has a right to display a symbol which, although it might reflect an unpopular viewpoint and evoke discomfort and unpleasantness, reasonably gives rise to nothing greater than an undifferentiated fear or apprehension of disturbance. On the other hand, we construe Tinker to indicate that school officials could appropriately prohibit the display of a symbol in circumstances that warrant a reasonable fear on the part of the school officials that the display would appreciably disrupt the appropriate discipline in the school. Id. at 514, 89 S.Ct. at 740 ("[T]he record does not demonstrate any facts which might have reasonably led school authorities to

forecast substantial disruption of or material interference with school activities . . . .").[2]

In applying the foregoing law to the instant case, we emphasize the posture in which this case comes to us: a dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6). In such posture, we of course assume all reasonable inferences in favor of Denno. See Santamorena, 147 F.3d at 1340. From the specific facts pled in the complaint, and summarized above, and the reasonable inferences therefrom, we construe the complaint as alleging that as of the time that Defendant Roberts interrupted Denno's small group discussion: Denno was displaying the flag in a quiet, unobtrusive manner to a small circle of friends during a lunch break in the school courtyard while discussing his avocation as a Civil War reenactor; he neither attempted to parade nor brandish the flag in a provocative manner; there had been no disruption in the school attributable to

---

[2] The Former Fifth Circuit has also addressed the appropriate balance between student expression and schoolhouse discipline, doing so in Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966) and Blackwell v. Issaquena County Board of Education, 363 F.2d 749 (5th Cir. 1966), both cited by the Supreme Court in Tinker. See Tinker, 393 U.S. at 504 n.1, 509, 513, 89 S.Ct. at 735 n.1, 738, 740. The Tinker Court found it "instructive" that the same Fifth Circuit panel upheld the students' right to wear "freedom buttons" in Burnside, but declined to do likewise in Blackwell, in opinions written by Judge Gewin and issued on the same day, because in Burnside there was no indication that the buttons would cause any material disruption of school activities, whereas in Blackwell there was a high degree of disturbance emanating from the wearing of the "freedom buttons." Tinker, 393 U.S. at 504 n.1, 509, 89 S.Ct. at 735 n.1., 738.

6

Denno's actions or similar occurrences;[3] and there had been no history of racial tension or disorder at Pine Ridge High School.[4]

Given the alleged context of Denno's small group discussion–a small, quiet and confined discussion amongst Denno and his friends of Civil War history and Denno's hobby as a Civil War reenactor–and given the alleged absence of any disruption or racial tension at the school, we conclude that Denno's complaint, if its allegations and its reasonable inferences are accepted as true, adequately alleges that there would have been no reasonable fear of disruption on the part of the school officials. We therefore conclude that Denno's complaint describes actions with respect to which Tinker has clearly established a student's First Amendment right. Considering only the allegations of Denno's complaint and the reasonable inferences therefrom in favor of Denno, we conclude that Denno has alleged a violation of the very First Amendment right that Tinker clearly established.[5]

---

[3] Nothing in this opinion should be construed as suggesting that school officials cannot reasonably prohibit the display of a symbol without having experienced a prior disturbance. Rather, the Tinker test is whether the circumstances warrant a reasonable fear of disruption. We note the alleged absence of past disruption in the instant case merely as one factor amongst the alleged circumstances and one factor in Denno's showing that there was no reasonable fear of disruption in this case.

[4] Indeed, Denno's proffered amendment to the complaint expressly alleged that no history of racial tension or disorder existed at Pine Ridge High School.

[5] We recognize that, after Denno had been suspended by defendant Roberts as Roberts was taking Denno to the administrative offices, the formal suspension notice which was later issued cited not only the flag incident which is the focus of this opinion, but also cited

7

In holding to the contrary,[6] the district court relied principally on two cases, Augustus v. School Bd. of Escambia County, Fla., 507 F.2d 152, 155 (5th Cir. 1975), and Melton v. Young, 465 F.2d 1332, 1334 (6th Cir. 1972), which, in the words of the court below, had "affirmed district court findings that the display of a Confederate flag was a focal point of racial irritation, offensive to a racial minority, and contributed to violence and the disruption of the school." Denno v. School Bd. of Volusia County, 959 F.Supp. 1481, 1487 (M.D. Fla. 1997). However, in both Augustus and Melton, integration was in its early stages and the records before the courts revealed many substantial racial disturbances; indeed, each school had to be closed on more than one occasion to avoid racial violence. See Augustus, 507 F.2d at 155; Melton, 465 F.2d at 1333. In short, both cases fell within the Tinker ruling

_____

insubordination as a ground for the suspension. The insubordination ground was apparently based upon a discrete incident occurring subsequent to the flag incident. Several reasons persuade us that the possible insubordination incident would not provide an appropriate ground for affirmance at this stage of the litigation. First, we see no indication that the district court relied upon the insubordination ground; second, even if the subsequent developments in this case reveal that the defendants should prevail on the insubordination ground, it is possible (depending, inter alia, upon whether Denno's allegations are borne out by subsequent factual development) that the initial suspension of Denno by Roberts may still be found to violate Denno's First Amendment rights and warrant some remedy. Under these circumstances, we decline to address the existence, vel non, or the significance of any insubordination.

    [6] In finding that Denno had alleged no clearly established right to display the Confederate flag at school, the district court expressly noted that a heightened pleading standard applies to § 1983 actions filed against officers in their individual capacities. Denno, 959 F.Supp. at 1484. Denno challenges that application on appeal, arguing that such a raising of the bar is incompatible with Fed. R. Civ. P. 8(a). However, because we conclude that Denno's complaint is adequate under either standard, we need not resolve this challenge.

that school officials could prohibit the display of a symbol in circumstances that warrant a reasonable fear on the part of school officials that the display would substantially disrupt discipline in the school.

In stark contrast to Augustus and Melton, the facts that we must assume in the present posture of the instant case place it clearly within the actual Tinker holding recognizing a student's First Amendment right to display a symbol. This case comes to us in a Rule 12(b)(6) posture where we take the allegations of the plaintiff as true. Thus, we must accept as true Denno's allegation that the context was a small group discussion, involving no disruption either actual or likely, and similarly accept the allegation that there had been no disruption attributable to similar occurrences. We must also take as true Denno's assertions that there had been no history of racial tension or disorder at Pine Ridge High School. Assuming these facts, and noting the absence of any facts in the complaint that would suggest a reasonable fear of disruption, we conclude that Denno has alleged a violation of the very First Amendment right that Tinker clearly established. The instant case involves facts materially similar to those in Tinker, and Tinker "truly compels" the conclusion that Denno's federal right was violated.[7] Santamorena, 147 F.3d at

---

[7] For the right to be clearly established, the law of this circuit is clear that there need not be an identical prior case; rather, what is necessary is a prior case that is materially similar. See Lassiter v. Alabama A& M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc) ("The facts need not be the same as the facts of the immediate case. But they do need to be

1340 (citing and quoting Ensley v. Soper, 142 F.3d 1402, 1406 (11th Cir. 1998),

and Lassister v. Alabama A&M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994) (en

banc)). Accordingly, we reverse the district court's Rule 12(b)(6) dismissal of

Denno's § 1983 claim against the individual defendants.[8]


## II. LIABILITY OF THE BOARD

Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018

(1978), holds that local governments (and branches thereof)[9] may not be held liable

for constitutional deprivations on the theory of respondeat superior.   Rather, they

---

materially similar.")(quoting from and adopting Adams v. St. Lucie County Sheriff's Dep't., 962 F.2d 1563 (11th Cir. 1992)(Edmondson, J., dissenting)).  With the holding in Tinker as clearly established law, and the reasonableness of the perceived likelihood of disruption test as the touchstone, we conclude that the facts in the instant case are materially similar to those in Tinker.  Indeed, in light of the antiseptic factual circumstances that we must accept as true at the motion to dismiss stage in the instant case, the likelihood of disruption as alleged by the complaint is clearly less than that which was present in Tinker.  In other words, the facts as revealed in the opinions of Supreme Court in Tinker clearly constitute a greater perceived risk of disruption than the facts alleged in the instant complaint.  Therefore, the result we reach in the instant appeal follows a fortiori from Tinker, or in other words, is dictated or compelled by it.

[8] Given the Rule 12(b)(6) posture of the instant case, we of course have not considered any evidence in the summary judgment record developed with respect to the claim against the Board, discussed infra.  We do recognize, however, that further development of the record at later stages of this litigation may well reveal facts that point in the direction of a reasonable fear of disruption, and may well change the factual context such that the challenged actions of the individual Defendants would not violate clearly established law.

[9] School boards constitute branches of local government and thus may be subject to liability under Monell.  See Arnold v. Board of Escambia County, 880 F.2d 305, 310 (11th Cir. 1989).

may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law. Id. at 694, 98 S.Ct. at 2037-38; Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997); Church v. City of Huntsville, 30 F.3d 1332, 1343 (11th Cir. 1994). In order for the actions of a government official to be deemed representative of the municipality, the acting official must be imbued with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299 (1986). Unlike the qualified immunity issue discussed above, the district court permitted the § 1983 claims against the Board to proceed beyond the pleadings stage; however, the district court granted summary judgment in favor of the Board.

Because Denno does not argue that the Board maintained any official policy prohibiting Confederate symbols, our resolution of this claim hinges on two issues: 1) whether the Pine Ridge High School administrators were officials vested with final policymaking authority, and 2) whether a custom or practice banning Confederate symbols existed. The district court answered both queries in the negative and accordingly granted summary judgment in favor of the Board. We agree with that assessment for the following reasons.

11

A. Final Policymaking Authority

Scala v. City of Winter Park, 116 F.3d 1396 (11th Cir. 1997), serves as our compass in the area of determining whether officials act with final policymaking authority so as to trigger entity liability under Monell. In Scala, drawing on City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915 (1988)(plurality opinion), we squarely held that "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." Scala, 116 F.3d at 1401. With this "embedded" principle in mind, id., we find Denno's argument that the school administrators possessed final policymaking authority unpersuasive.

Policy 208 of the Volusia County School Board, entitled "Code of Student Conduct and Discipline," sets forth a successive three-step grievance procedure for the resolution of "complaints filed by a student or parent/guardian with regard to their respective rights under school board policy, school rule, state or federal law." Step 1 involves meeting with the school principal informally; Step 2 involves review by the area assistant superintendent; and Step 3 permits a student to request a hearing if dissatisfied with the previous two steps. Policy 208 at 14-15. In order to trigger review by the area assistant superintendent, the grievant is required to file

12

a copy of the grievance form with the area assistant superintendent within 7 days of the meeting with the principal outlined in Step 1. Policy 208 at 14.

The district court concluded that Policy 208, the "Code of Student Conduct and Discipline," provided for meaningful review of the school officials' disciplinary decisions, but concluded that Denno did not timely comply with the requirements for seeking review under Step 2. The court relied on Policy 208 itself and on a letter dated April 22, 1996, from Area Assistant Superintendent Lee Britton, stating that Denno had failed to pursue the appeal of his suspension in timely fashion and had therefore waived the opportunity to request the hearing mentioned in Step 3 of the grievance procedure. Indeed, it appears that Denno did not pursue an appeal in timely fashion and never filed a copy of the grievance form necessary to proceed with Step 2 of the review procedure.

As a matter of law, we agree with the district court that the "Code of Student Conduct and Discipline" allowed for meaningful review of Denno's suspension. The fact that Denno had to file an appeal with the area assistant superintendent before his suspension could be reviewed does not make the school administrators final policymakers. Scala clearly states that this circuit equates meaningful review with the opportunity for meaningful review. Scala, 116 F.3d at 1402. ("It is clear that [officials] do not become policymakers for § 1983 purposes simply because

persons who disagree with their decisions have to file an appeal in order to have those decisions reviewed.") In other words, automatic review need not be made available when the opportunity for meaningful review is present. The express review mechanisms set into place by the grievance procedures detailed in the "Code of Student Conduct and Discipline" satisfy us that such opportunity existed in the instant case. Therefore, given the availability of this review, we agree with the district court that the Pine Ridge High School administrators were not final policymakers so as to make the Board liable under Monell.

B. Custom or Practice

In order for the Board to be held liable under the custom or practice prong of Monell, Denno must demonstrate that a custom or practice of banning the Confederate flag at high schools within the school district is so well-settled and pervasive that it assumes the force of law. See Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). Put another way, Denno must show a "persistent and widespread practice" of prohibiting the Confederate emblem about which the Board knew or of which practice it had constructive knowledge, because "[n]ormally random acts or isolated incidents are insufficient to establish a

14

custom . . . ." Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994)(quoting Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986)).

The district court held that a custom of prohibiting the Confederate flag from being displayed on school grounds could not be attributed to the Board. While Denno correctly points out that three other students were disciplined for similar displays of the flag in December 1995, these incidents transpired in the immediate aftermath of Denno's suspension in an effort to maintain discipline amongst the students and did not represent a persistent and widespread practice of the Board.[10] Indeed, Wayne Denno's own testimony undermines his argument that there was a custom or practice of banning the flag. Denno stated in his deposition that he had previously displayed the Confederate flag on school grounds and had not been disciplined and had witnessed others do so without consequence. In fact, Denno could not recall any student, prior to his suspension, suffering punishment for the display of the Confederate flag at Pine Ridge High School. Nor did Denno adduce evidence of similar suspensions at other schools within the school district governed

---

[10] Apparently, after Denno was suspended, the Dennos relayed the information to the local press. Pine Ridge Principal Sandra Rowe learned of the story covering Denno's suspension, and according to Denno, issued an unwritten ban of the Confederate flag to the faculty in a meeting held on December 15, 1995. The three other students who were disciplined after Denno for displaying the Confederate flag were disciplined subsequent to the December 15th meeting. However, for the reasons discussed above, the Principal was not a final policymaker, and for the reasons discussed in the text, there is no evidence that the unwritten ban was sufficiently pervasive or well-settled to have put the Board on notice.

15

by the Board.  Given the lack of evidence with respect to the prohibition of the Confederate flag at Pine Ridge or at other schools within the district, we agree with the district court that Denno failed to adduce evidence creating a genuine issue of fact as to a pervasive and well-settled custom of banning the Confederate flag so as to make the Board potentially liable under <u>Monell</u>.

For the foregoing reasons, we agree with the district court that, under <u>Monell</u> and its progeny, the Board cannot be held liable.  Thus, we affirm the district court's grant of summary judgment in favor of the Board.


## III.  CONCLUSION

We affirm the district court's grant of summary judgment in favor of the Board; however, we reverse the court's Rule 12(b)(6) dismissal of Denno's § 1983 claims against the individual defendants and remand for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

BLACK, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's well-reasoned decision as to the School Board, as set forth in Part II of the opinion. I disagree, however, with the majority's decision as to the qualified immunity of the school officials.

The school officials begin with qualified immunity. To overcome this immunity, Appellant has the burden of pointing to pre-existing case law that involves materially similar facts and truly compels the conclusion that the school officials violated his First Amendment rights. Whether the complaint alleges the violation of a clearly established right is a question of law subject to de novo review.

A school official does not violate a student's First Amendment rights by restricting the student's conduct, so long as the official reasonably believes the student's conduct might lead to material disruption. *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 513-14, 89 S. Ct. 733, 740 (1969). Neither party has cited, nor could I find, any case clearly establishing the unreasonableness of a school official's belief that the display of a Confederate battle flag in a racially integrated school in the deep South might lead to material disruption. In the absence of such a case, the school officials are entitled to immunity. Accordingly, I respectfully dissent from Part I of the opinion.

17