NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0145n.06
Filed: February 21, 2007

## No. 06-5982

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| D.B., A MINOR, BY AND THROUGH HIS PARENT AND GUARDIAN, SHARON BROGDON; R.W. AND C.W., BOTH MINORS, BY AND THROUGH THEIR PARENT AND GUARDIAN, ROGER WHITE, <br><br> *Plaintiffs-Appellants*, <br><br> v. <br><br> STEVE LAFON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS PRINCIPAL OF WILLIAM BLOUNT HIGH SCHOOL; ALVIN HORD, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF SCHOOLS; BLOUNT COUNTY SCHOOL BOARD, <br><br> *Defendants-Appellees*. | ) ) ) ) ) ) ) ) ) ) ) On Appeal from the United States ) District Court for the Eastern ) District of Tennessee ) ) ) ) ) ) ) ) ) ) ) |

Before: **DAUGHTREY** and **COOK**, **Circuit Judge**s; and **WEBER, District Judge**.[1]

**PER CURIAM.**

Plaintiffs/Appellants Sharon Brogdon and Roger White bring this appeal on behalf of their respective minor children, identified as "D.B.," "C.W." and "R.W.," from a district court order denying their motion for preliminary injunction. For the reasons stated below, we AFFIRM.

---

[1] The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

**I.**

On March 2, 2006, the plaintiffs brought suit under 42 U.S.C. § 1983 against the director and school board of Blount County Schools and the principal of William Blount High School, alleging that the defendants violated the First and Fourteenth Amendment rights of the plaintiffs' minor children by prohibiting students from wearing clothing that depicts the Confederate battle flag. In addition to the complaint's prayer for relief, the plaintiffs filed a separate motion for preliminary injunction and temporary restraining order.

On May 4, 2006, the district court held a hearing on the preliminary injunction motion. The parties presented no witnesses, the plaintiffs instead relying upon affidavits submitted as attachments to their complaint, and the defendants upon affidavits submitted in opposition to the motion. In its subsequent order denying the plaintiffs' motion, the court made findings of fact, set forth as follows in pertinent part:

> The Blount County Board of Education has adopted a dress code that applies to all high school students. That dress code prohibits students from wearing certain items, including the following:
>
> > f. clothing which exhibits written, pictorial, or implied references to illegal substances, drugs or alcohol, negative slogans, vulgarities, or causes disruption to the educational process; wearing apparel that is sexually suggestive or that features crude or vulgar commercial lettering or printing and/or pictures that depict drugs, tobacco, alcohol beverages, racial/ethnic slurs or gang affiliation . . .
>
> The ban at issue in this case was imposed pursuant to the provision prohibiting clothing that "causes disruption to the educational process."
>
> . . . [P]laintiffs allege that on May 30, 2005, during the 2004-05

2

school year, they, along with the other students at William Blount High School, were informed that depictions of the confederate battle flag on students' clothing would be considered a violation of the school's dress code, even though such depictions were not previously considered violations. On September 1, 2005, during the 2005-06 school year, despite the prohibition and "to express pride in his southern heritage," plaintiff D.B. wore a shirt depicting the confederate battle flag, two dogs, and the words "Guarding our Southern Heritage." He was allegedly confronted by defendant LaFon [sic], the school's principal, who reminded D.B. about the ban, told him to turn his shirt inside out or take it off, and threatened him with suspension if he refused. A similar incident involving plaintiff C.W. allegedly occurred on January 13, 2006. There is no evidence whether plaintiff R.W. had a similar experience.

Plaintiffs allege that William Blount High School permits other expressions "of political or controversial significance," and [that] there have been no disruptions resulting from the depiction of the confederate battle flag . . . Plaintiffs D.B. and C.W. also explain in their [affidavits] that they have seen other students wearing foreign flags, Malcolm X symbols, and political slogans.

Defendants have responded in opposition . . . and have included two affidavits. In the first affidavit, defendant LaFon [sic] explains that defendant Hord [the director of Blount County Schools] directed him to apply the dress code without viewpoint discrimination and that during the 2005-06 school year there were "over 452 documented violations of the dress code policy . . . 23 of which involved the wearing of the 'Confederate flag' by students." Defendant LaFon [sic] goes on to explain that while "there have been no reported incidents of students wearing clothing emblazoned with Malcolm X words or caricatures[ ] or international flags[,] [t]here have been numerous non-documented incidents of violations . . . beyond those documented."

In the second affidavit, defendant Hord . . . describes racial tensions at William Blount High School. According to the affidavit, on February 22, 2005, there was a "physical altercation between a white student and an African-American student," which resulted in a civil rights complaint against the school system. On April 7, 2005, defendant Hord requested that the school be locked down with the presence of sheriff's deputies "due to threats of violence against African-American students."

3

> For the remainder of the 2004-05 school year, defendant Hord explains that sheriff's deputies remained at the school, and there were "multiple racially motivated threats and physical altercations" that resulted in suspensions and civil rights complaints and a civil lawsuit that alleges the school system is "a racially hostile educational environment." During the 2005-06 school year, two more racial harassment complaints were made to the board of education. Based upon those events, defendant Hord concluded that "the wearing of the 'Confederate flag' by students during school hours has a significant disruptive effect on the proper education environment of the students at the Blount County high school."

(R.22-24, citations omitted).

Applying the balancing test for injunctive relief set forth in *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000), to the facts before it, the district court concluded that the plaintiffs could not demonstrate a substantial likelihood of success on the merits. On June 30, 2006, the court entered an order denying the motion for preliminary injunction. The plaintiffs filed this timely appeal.

## II.

A district court's decision to grant or to deny a motion for preliminary injunction is reviewed for abuse of discretion. *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). The lower court's determination will be disturbed only if that court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard. *City of Paducah*, 202 F.3d at 888. Under that standard, the district court's legal conclusions are reviewed *de novo* and its factual findings for clear error. *Taubman v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003). A factual finding is clearly erroneous "when the reviewing court is left with the definite and firm conviction that a mistake has been made." *United States v. Smith*, 263 F.3d 571, 581 (6th Cir. 2001).

In determining the appropriateness of the requested injunctive relief, the district court applied

4

the correct four factor balancing test: 1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; 2) whether there is a threat of irreparable harm to the plaintiff; 3) whether issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by granting injunctive relief. *City of Paducah*, 202 F.3d at 888. In the context of First Amendment violations, the "likelihood of success" factor frequently is determinative. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), *cert. denied*, 526 U.S. 1087 (1999).

Under case law applicable to free speech claims, "the loss of First Amendment freedoms, for even minimal periods of time," is presumed to constitute irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Such protection extends to public school students, who do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Nevertheless, "the First Amendment rights of students in public schools are not automatically coextensive with the rights of adults in other settings, and must be applied in light of the special characteristics of the school environment." *West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1366 (10th Cir.), *cert. denied*, 531 U.S. 825 (2000). Schools need not tolerate student speech deemed inconsistent with the educational mission even if similar speech would not be subject to censor outside the school setting. *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988). Still, schools may not punish "silent, passive expression of opinion, unaccompanied by any disorder or disturbance" attributable to such expression, and "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker*, 393 U.S. at 508.

The wearing of clothing depicting the Confederate flag as an expression of pride in one's

southern heritage constitutes speech governed by the First Amendment. *Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 540 (6th Cir. 2001). Nevertheless, school officials may ban what otherwise would be protected speech where "engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school'." *Tinker*, 393 U.S. at 509. On the other hand, even where past racial incidents justify a ban, schools may not impose "a view-point specific ban on [some] racially divisive symbols and not others." *Castorina*, 246 F.3d at 544. A school's refusal to bar the wearing of apparel depicting Malcolm X symbols along with clothing depicting the Confederate flag "gives the appearance of a targeted ban." *Id.* at 541.

## III.

The plaintiffs assert that the district court erroneously found that the defendants "had reason to believe that a student's display of the Confederate flag *might cause* disruption." (R.31, emphasis in original). Given Blount High School's recent history of racial tensions as recited in the record, however, the court's finding to that effect was not clearly erroneous. Even without evidence that Confederate flag displays had been the direct cause of past disruptions, school officials reasonably could surmise that such displays posed a substantial risk of provoking problems in the incendiary atmosphere then existing. "In this case, the district had a reasonable basis for forecasting disruption from display of such items at school." *See Derby Unified Sch. Dist.*, 206 F.3d at 1366; *see also Castorina*, 246 F.3d at 542 [suggesting that undisputed evidence of past racially-motivated violence or threats in a particular school district could justify a conclusion that "display of the Confederate flag" in such schools might have a "significant disruptive effect"], 543-44 ["a school board may ban racially divisive symbols when there has been actual racially motivated violence and when the policy

6

is enforced without viewpoint discrimination"].

The plaintiffs' assertion that the district court's ruling "requires a presumption that the Confederate flag is per se 'racially divisive'" and in essence rises "to the level of judicially noticed fact" does not alter this result. While the district court here did not comment explicitly on the Confederate flag's inherent racial divisiveness, other federal appellate courts have. According to the Eleventh Circuit, for example, "[i]t is . . . clear that the primary effect of the [Confederate] flag . . . is to remind citizens, albeit offensively to some, of a controversial era in American history." *NAACP v. Hunt*, 891 F.2d 1555, 1564 (11th Cir. 1990). Another circuit court has observed that "[i]t is common knowledge that public reaction to and the debate over . . . the Confederate [b]attle flag . . . has been virtually exclusively in relation to . . . whether or to what extent this symbolism extols or excuses slavery, racial oppression or resistance to racial equality." *Briggs v. State of Mississippi*, 331 F.3d 499, 506 (5th Cir. 2003), *cert. denied*, 540 U.S. 1108 (2004). Indeed, this Circuit also has implicitly acknowledged that the Confederate flag qualifies as a "controversial racial and political symbol[ ]." *Castorina*, 246 F.3d at 542. Accordingly, even if some recognition of the flag's racially divisive nature is implicit in the district court's finding, that finding is not rendered clearly erroneous thereby.

The plaintiffs' assertion that they proved an "[a]bsence of [d]isorder [a]ssociated with the Confederate [f]lag" is not dispositive of that factual issue. Even assuming that no students' wearing of that symbol had caused a disruptive incident in the past, the district court nonetheless reasonably could conclude that displays of the Confederate flag would be likely to lead to unrest in the future. Such a determination is not erroneous as either a factual finding or a legal conclusion.

The plaintiffs also argue that the district court erroneously failed to find that the defendants

7

enforced the dress code in a viewpoint-specific manner. Plaintiffs cite three examples said to impel this conclusion. First, relying on their affidavits as establishing that the school district regularly failed to discipline students wearing Malcolm X symbols or other national flags, the plaintiffs urge that the evidence compels a factual conclusion that the Confederate battle flag was the only political symbol targeted by the defendants for dress code enforcement. The district court's finding that this evidence did not prove viewpoint discrimination, however, was not clearly erroneous. The evidence indicates that wearing of the Confederate flag accounted for only 23 of 452 instances of dress code violations documented since August of 2005. The plaintiffs presented no evidence showing how frequently or conspicuously other political symbols were worn by students, or even that school officials were aware of the presence of clothing depicting those other political symbols. Evidence presented by the defendants tends to suggest that they were not. In light of evidence of numerous other dress code violations that had not been documented, the district court's speculation that "other instances of dress code violations . . . involv[ing] a variety of symbols[ ]" may have been "resolved informally" also does not constitute clear error.

The plaintiffs also contend that the district court's analysis is internally inconsistent and therefore clearly erroneous. Specifically, the plaintiffs argue that the district court cannot logically conclude that school officials detected and eliminated visible depictions of Confederate flags so quickly as to avert any possible disruptions caused thereby, yet failed to notice clothing depicting Malcolm X symbols and international flags. Because no such inconsistency seems inherent, however – both absent proof of how frequently and conspicuously such other symbols appeared relative to the frequency and conspicuousness of depictions of the Confederate battle flag, and in light of possible justification for differentiating among certain symbols – no clear error finding is warranted

on that basis.

Finally, the plaintiffs point to uncontroverted evidence that the Confederate flag was the only symbol specifically mentioned by the defendants when announcing the ban. This presents a closer call, as the fact that the Confederate flag apparently was singled out in this way does bolster the plaintiffs' position. Given the clear error standard of review, however, the appellate court has no basis for disrupting the district court's conclusion that, without more, school officials' citing of that sole example does not prove they intended to ban only the Confederate battle flag, and not other symbols. The district court's conclusion that the plaintiffs "have not produced sufficient evidence to show that the school's policy probably imposes 'a viewpoint-specific ban on [some] racially divisive symbols but not others" thus is not clearly erroneous.

The plaintiffs also contend that the district court erred in analyzing their motion under the premise that "[s]chool officials may ban racially divisive symbols when there has been actual racially motivated violence and when the policy is enforced without viewpoint discrimination." (R. 25). They urge that such standard is inconsistent with the one set out in *Tinker* and utilized by this Court in *Castorina*. They further argue that as a result of applying an incorrect standard, the district court drew erroneous legal conclusions about the school district's authority to ban the wearing of the Confederate battle flag.

Ironically, the language thus singled out by Plaintiffs appears almost verbatim in *Castorina*, 246 F.3d at 543-44. Neither is that language inconsistent with *Tinker*. Under *Tinker*, "to justify prohibition of a particular expression of opinion," a school district must be able to show only "that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint," but rather, "that the school

9

authorities had reason to anticipate that the wearing of [the banned imagery] would substantially interfere with the work of the school or would impinge upon the rights of other students," 393 U.S. at 509, including the right "to be secure and to be let alone." *Id.* at 508.

Recognizing that the *Tinker* decision does **not** require that the banned form of expression itself actually have been the source of past disruptions, subsequent appellate court decisions considering school bans on expression have focused on whether the banned conduct would likely trigger disturbances such as those experienced in the past. *See, e.g., Castorina*, 246 F.3d at 542; *Melton v. Young*, 465 F.2d 1332 (6th Cir. 1972), *cert. denied*, 411 U.S. 951 (1973). Although *Melton* differs in that the record there contained evidence that the Confederate flag in fact had been a factor in past unrest, *see* 465 F.2d at 1333, 1335, nothing in *Melton* or *Tinker* **requires** evidence of a preexisting incident of the banned symbol evoking disruption. To the contrary, "[t]he fact that a full-fledged brawl ha[s] not yet broken out over the Confederate flag does not mean that [a school] district [i]s required to sit and wait for one." *West*, 206 F.3d at 1366 (quoting with favor *West v. Derby Unified Sch. Dist. No. 260,* 23 F. Supp.2d 1223, 1233 (D. Kan. 1998)).

Unlike the record in *Tinker*, the record in this case evidences ample reason for school officials to anticipate disruption resulting from the wearing of the banned symbol. During the prior academic year, Blount High School had been the scene of racial tension, intimidation and violence to such an extent that law enforcement officials were brought in to maintain order, and the school was defending against lawsuits depicting it as a racially hostile educational environment. As discussed above, the district court had a sound factual basis for finding that defendants "had reason to believe that a student's display of the Confederate flag *might cause* disruption." Reviewing the district court's analysis *de novo*, we conclude that neither the legal standard applied nor the legal

conclusions drawn were erroneous.

The plaintiffs further argue that the district court erred by assigning them the burden of proof with respect to the four-part balancing test for acquiring preliminary injunctive relief. Although the plaintiffs correctly observe that the defendants would bear the burden at trial of establishing that the Confederate flag ban does not violate the Constitution, it remains the plaintiffs who bear the burden of establishing the need for a preliminary injunction. *Connection Distrib.*, 154 F.3d at 288. The district court appears properly to have required the defendants to show that the ban was justified in light of past racial disturbances at the school, and properly to have found that the defendants sustained that burden. Having failed to respond with evidence sufficient to prove that such ban was enforced in a viewpoint-specific manner, however, the plaintiffs did not sustain their burden of proving that they were likely to succeed on the merits. We therefore AFFIRM the district court's denial of the motion for preliminary injunction.